# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

SALVADOR BACA SANCHEZ,                       )     1:07-CV-00840 AWI JMD HC
                                             )
                 Petitioner,                 )
                                             )
          v.                                 )     FINDINGS AND RECOMMENDATION
                                             )     REGARDING PETITION FOR WRIT OF
                                             )     HABEAS CORPUS
AVENAL STATE PRISONER WARDEN,                )
                                             )
                 Respondent.                 )
_____     )

Petitioner Salvador Baca Sanchez ("Petitioner") is a State prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## **PROCEDURAL BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation at Avenal State Prison, pursuant to a judgement of the Kern County Superior Court. (Pet. at 2).   Petitioner was convicted by a jury on August 9, 1991 of second degree murder and sentenced to a term of fifteen years to life.  (Pet at 2; Answer at 1).

On May 24, 2006, Petitioner appeared before the California Board of Parole Hearings (the "Board") for a parole consideration hearing.  (Answer at 2).  The Board found Petitioner unsuitable for parole.  (*Id*.).

Petitioner subsequently filed a petition for writ of habeas corpus with the California Supreme Court on October 18, 2006, challenging the Board's denial of parole.   (Answer Ex. 3).  The California Supreme Court issued a summary denial of Petitioner's request for relief on August 30, 2007.  (Answer Ex. 4).

1    Respondent admits that Petitioner has exhausted his state remedies and that the instant

2    petition is timely.  (Answer at 3).

3           On June 11, 2007, Petitioner filed the instant federal petition for writ of habeas corpus.

4           On February 11, 2008, Respondent filed a response to the petition.

5           On March 3, 2008, Petitioner filed a reply to the Respondent's answer.

6                                    **FACTUAL BACKGROUND**

7           Pursuant to California regulations, the circumstances of the underlying offense is a factor the

8    Board can consider in determining whether a prisoner is suitable for parole.  *See* Cal. Code Regs., tit.

9    15, § 2402(c)(1).  Therefore, the making the facts of the underlying offense relevant to the Court's

10   inquiry.  The Board incorporated by reference the factual findings of the California Court of

11   Appeal's opinion, as contained in the 2005 Board Report.[1]  (Answer Ex. 2, Parole Board Hearing, at

12   13-14).  The appellate court decision stated that the victim had been stabbed to death by Petitioner

13   during a party on Petitioner's property.  (*Id*. at 13).  Prior to the stabbing, the victim had been

14   involved in a physical altercation with Petitioner's grandson, apparently stemming from the victim

15   insulting the mother of Petitioner's grandson.  (*Id*. at 13-14).  After falling onto a bonfire, the victim

16   threatened to kill Petitioner's grandson and produced a knife.  Petitioner separated the two and talked

17   the victim into giving Petitioner the knife; Petitioner then gave the knife to his grandson.  (*Id*. at 14).

18   Several minutes later, Petitioner took the knife from his grandson and suddenly stabbed the victim.

19   (Id).  Petitioner enlisted his grandson in burying the victim's body in a hole on his property.

20          At the hearing, the Board also read into the record Petitioner's version of events, also

21   contained in the 2005 Board Report.  Petitioner does not deny that an altercation occurred between

22   the victim and his grandson over insults the victim made.  (*Id*. at 15).  Petitioner contends, however,

23   that after he broke up the altercation between his grandson and the victim, the victim retained

24

25          [1]Petitioner contends that the information read into the record was actually derived from the Porbation Officer's
26   report, dated September 16, 1991.  (Pet. at 5iii to 5iv).  The Court notes that Petitioner has failed to provide this Court with
     any evidence, including the probation officer's report, in which the Court may ascertain the merits of this allegation.  More
27   importantly, the Court notes that such an allegation has no impact on the Court's consideration of the merits of this claim as
     California regulations permit the Board to consider "[a]ll relevant, reliable information." Cal. Code Regs., tit. 15, § 2402(b).
28   Petitioner's attack on the reliability of the Probation Officer's Report is conclusory as he has not provided any evidence that
     would permit the Court to question the reliability of the Probation Officer's Report, including the report itself.

1  possession of the knife and threatened to kill Petitioner.  (*Id*. at 15-16).  Furthermore, Petitioner

2  claims that a struggle between himself and the victim for the knife ensued immediately after this

3  threat.  (*Id*. at 16).  Petitioner further avers that during the struggle, the victim stabbed him twice and

4  that Petitioner stabbed the victim because he was afraid for his life and the life of his grandson.  (Id)

5  \\\

6  \\\

7  **DISCUSSION**

8  **I.**  **Jurisdiction and Venue**

9        A person in custody pursuant to the judgment of a state court may petition a district court for

10  relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or

11  treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529

12  U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by

13  the United States Constitution.  Petitioner's custody arose from a conviction in the Kern County and

14  he is currently incarcerated Avenal State Prison in Kings County.  Kings and Kern County are within

15  this judicial district.  28 U.S.C. § 84(b).  As an application for writ of habeas corpus may be filed in

16  either the judicial district where Petitioner is currently incarcerated or where Petitioner was

17  sentenced, the Court has jurisdiction over and is the proper venue for this action.  *See* 28 U.S.C. §

18  2241(d).

19  **II.**  **ADEPA Standard of Review**

20        In April 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996

21  ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's

22  enactment.  *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499

23  (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97

24  F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by*

25  *Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)).  The

26  instant petition was filed in 2007 and is consequently governed by AEDPA's provisions, which

27  became effective upon its enactment on April 24, 1996.  *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).

28        As Petitioner is in the custody of the California Department of Corrections and Rehabilitation

pursuant to a State court judgment, Title 28 U.S.C. section 2254 remains the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a State court judgment even where the petitioner is not challenging his underlying State court conviction). Under AEDPA, a petition for habeas corpus "may be granted only if [Petitioner] demonstrates that the State court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the State court renders its decision." *Id.*

Finally, this Court must consider whether the State court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the State court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the State court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the State court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant State court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the

1  "unreasonable application" inquiry should ask whether the State court's application of clearly

2  established law was "objectively unreasonable." *Id.* at 409.

3     Petitioner bears the burden of establishing that the State court's decision is contrary to or

4  involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*,

5  94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth

6  Circuit precedent remains relevant persuasive authority in determining whether a State court decision

7  is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v.*

8  *Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

9     AEDPA requires that a federal habeas court give considerable deference to State court

10  decisions. The State court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1).

11  Furthermore, a federal habeas court is bound by a State's interpretation of its own laws. *Souch v.*

12  *Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537

13  U.S. 1149 (2003).

14     As noted above, Petitioner's claims were first presented in a petition for writ of habeas

15  corpus in the California Supreme Court. (*See* Answer at 3). The petition was summarily denied on

16  August 30, 2007. (Answer Ex. 4). Application of AEDPA's strict standard of review "is

17  signficantly impeded where, as here, the state court supplies no reasoned decision." *Himes v.*

18  *Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Consequently, where a state court provides no

19  rationale for its decision, a federal habeas court determines whether the state court's decision was

20  "objectively unreasonable" based on its independent reading of the record. *Brazzel v. Washington*,

21  491 F.3d 976, 981 (9th Cir. 2007) (quoting *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002));

22  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by Lockyer*, 538

23  U.S. at 75-76; *see also Himes*, 336 F.3d at 853.

24  **III.     Review of Petitioner's Claim**

25     Petitioner raises two grounds for relief stemming from the Board's denial of his parole. (Pet.

26  at 5). In his first ground for relief, Petitioner alleges that the Board's denial was arbitrary.

27  Specifically, Petitioner faults the Board for failing to adequately weigh evidence favorable to a

28  finding of suitability and for relying upon the commitment offense and other immutable factors.

Similarly, Petitioner's second ground for relief challenges the Board's consideration of evidence, which Petitioner contends is unreliable.  While Petitioner never explicitly contends that these errors constitute a violation of his constitutional rights, Petitioner does allege that the Board's decision was arbitrary.  The Court thus construes Petitioner to have alleged a violation of his right to due process of the law stemming from the Board's reliance on immutable factors, the Board's erroneous weighing of favorable evidence, and the Board's failure to adhere to state regulations mandating the consideration of all relevant and reliable evidence.

"We analyze a due process claim in two steps.  '[T]he first asks whether there exist a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.'"  *Sass*, 461 F.3d at 1127. The United States Constitution does not, by itself, create a protected liberty interest in a parole date. *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981).   In the briefs submitted to the Court, Respondent argues that Petitioner does not have a liberty interest in parole notwithstanding several Ninth Circuit holdings to the contrary.  (Answer at 3).  The Ninth Circuit has held that a prisoner possess a liberty interest in parole where mandatory language in a state's statutory scheme for parole creates a presumption "that parole release will be granted' when or unless certain designated findings are made, and thereby give rise to a constitutional liberty interest.'"  *McQuillion v. Duncan*, 306 F.3d 895, 901 (9th Cir. 2002) (quoting *Greenholtz v. Inmates of Nebraska Penal*, 442 U.S. 1, 12 (1979) in holding that California's parole scheme gives rise to a cognizable liberty interest in release on parole).  California Penal Code section 3041 contains the requisite mandatory language, thus vesting California prisoners "whose sentence provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause."  *Irons*, 505 F.3d at 850; *see also McQuillion*, 306 F.3d at 903; *see also Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003).  Consequently, the Court finds that Petitioner has a protected liberty interest in a parole date.

A finding that a liberty interest exists does not end the Court's inquiry as the Due Process Clause is not violated where the denial of a petitioner's liberty interests follows the state's observance of certain procedural safeguards.  *See Greenholtz*, 442 U.S. at 12.  Respondent argues

1   due process merely entitles Petitioner the right to be heard, advance notice of the hearing, and for the

2   Board to state their reasons for denial.  This contention is based on the argument that the "some

3   evidence" standard does not constitute clearly establish federal law and is not applicable to parole

4   denials.  Respondent is correct in one respect as a parole release determination is not subject to all of

5   the due process protections of an adversarial proceeding.  *See Pedro v. Oregon Parole Board*, 825

6   F.2d 1396, 1398-99 (9th Cir. 1987).  "[S]ince the setting of a minimum term is not part of a criminal

7   prosecution, the full panoply of rights due a Petitioner in such a proceeding is not constitutionally

8   mandated, even when a protected liberty interest exists."  *Id*. at 1399; *Jancsek v. Oregon Bd. of

9   Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987).  At a state parole board proceeding, an inmate is

10  entitled to receive advance written notice of a hearing.  *Pedro*, 825 F.2d at 1399.  Additionally, the

11  inmate must be afforded an "opportunity to be heard" and told why "he falls short of qualifying for

12  parole."  *Greenholtz*, 442 U.S. at 16.  Here, the Court notes that Petitioner does not allege that he

13  was deprived of any of these rights.

14      However, the Ninth Circuit has consistently recognized that due process mandates an

15  additional procedural safeguard–specifically requiring that the Board's decision be supported by

16  "some evidence."  *See Irons*, 505 F.3d at 851; *also Sass*, 461 F.3d at 1128-1129.  "In *Superintendent,

17  Mass. Correc. Inst. v. Hill* [472 U.S. 445 (1985)] the Supreme Court held that 'revocation of good

18  time does not comport with 'the minimum requirements of procedural due process' unless the

19  findings of the prison disciplinary board are supported by some evidence in the record.'"  *Sass*, 461

20  F.3d at 1128 (citations omitted).  The Ninth Circuit has held that the same standard of "some

21  evidence" that applies to the revocation of good time also extends to parole determinations and that

22  this same standard of judicial review applies to habeas petitions regarding parole denials.  *Irons*, 505

23  F.3d at 851; *Sass*, 461 F.3d at 1128-1129.  This evidentiary standard prevents arbitrary deprivations

24  of the prisoner's liberty interest without imposing undue administrative burdens or threatening

25  institutional interests.  *Hill*, 472 U.S. at 455.  Thus, the Court finds that the "some evidence"

26  standard is applicable.  The dispositive inquiry now before this Court is whether the State court's

27  denial of Petitioner's claim is objectively unreasonable based on an independent review of the

28  record.

This inquiry is framed by the statutes and regulations governing parole suitability determinations in California. *Irons*, 505 F.3d at 851; *Briggs*, 334 F.3d at 915. California law provides that after an eligible life prisoner has served the minimum term of confinement required by statute, the Board "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for" the prisoner. Cal. Penal Code § 3041(b). "[I]f in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison," the prisoner must be found unsuitable and denied parole. Cal. Code Regs., tit. 15, § 2402(a); *see In re Dannenberg*, 34 Cal.4th 1061, 1078, 1080 (Cal. 2005). The Board decides whether a prisoner is too dangerous to be suitable for parole by applying factors set forth in the California Code of Regulations. *See* Cal. Code Regs., tit. 15, § 2402; *Irons*, 505 F.3d at 851-852; *Biggs*, 334 F.3d at 915-916. The regulation's criteria permits consideration of "all relevant, reliable information available to the panel," and explicitly calls for consideration of "the base and other commitment offenses, including behavior before, during and after the crime," among several other factors.[2] Cal. Code Regs., tit. 15, § 2402(b). Factors supporting a finding of unsuitability for parole include: (1) the underlying offense was carried out in an "especially heinous, atrocious or cruel manner"; (2) a record, prior to incarceration for the underlying offense, of violence; (3) a history of unstable relationships with others; (4) sadistic sexual offenses; (5) a lengthy history of severe mental problems related to the underlying offense; and (6) serious misconduct in jail. Cal. Code Regs., tit. 15, § 2402 (c)(1)-(6); *see also In re Shaputis*, 44 Cal.4th 1241, 1257 n. 14 (Cal. 2008).

The California Supreme Court recently reiterated that the aggravated circumstances of the commitment offense may serve as a basis for denying parole but limited consideration of this factor,

---

[2]The statute specifically states, "All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstance which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability." Cal. Code Regs., tit. 15, § 2402(b).

stating that:

> [T]he aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

*In re Lawrence*, 44 Cal.4th 1181,1214 (Cal. 2008).  The *Lawrence* court further clarified that some evidence will support the Board's reliance on immutable facts, such as an inmate's criminal history or the commitment offense, if those facts support "the ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety."  *Id*. at 1221 (emphasis in original) (holding that relevant inquiry before a reviewing court is whether some evidence supports the decision that the inmate constitutes a current danger to the public safety, not merely whether some evidence confirms the existence of the Board's factual findings).  Noting that "all of the information in [the] postconviction record supports the determination that the inmate is rehabilitated and no longer poses a danger to public safety," the California Supreme Court found that the commitment offense was not probative of petitioner's current dangerousness.  *Id*. at 1226-1227; *but cf. Shaputis*, 44 Cal.4th at 1260 (holding that immutable factor of commitment offense, when combined with a failure to gain insight and understanding into the crime, provides some evidence of current dangerousness).

After reviewing the record, the Court concludes that the California Supreme Court's denial of relief on this claim would not have been an objectively unreasonable application of clearly established federal law   *See* 28 U.S.C. § 2254(d)(1).  In determining that Petitioner was unsuitable for parole and posed an unreasonable risk of danger to public safety if released, the Board weighed factors in favor and against granting parole.  The Board found the following factors supported a finding of unsuitability: (1) the commitment offense; (2) Petitioner's prior offenses demonstrated an escalating pattern of criminal conduct and a failure to profit from society's previous attempt to rehabilitate him; (3) a lack of viable parole plans; (4) opposition by the District Attorney's office; and (5) opposition by the victim's next of kin.  (Answer Ex. 2 at 84-85).  The Board commended Petitioner for his discipline free record during the length of his incarceration, his consistent participation in Alcoholics Anonymous, and his acquisition of vocational skills.  (*Id*. at 86).  The Board also noted that the psychological evaluation was favorable.  (*Id*. at 85).  However, in weighing

1  these positive factors against those supporting unsuitability, the Board found the positive aspects did

2  not outweigh the unsuitability factors.  (*Id*. at 86).   Thus, Petitioner's second contention, that the

3  Board erroneously considered unreliable evidence, fails to provide a basis for relief.  The Board did

4  weigh all the evidence as Petitioner was provided a lengthy opportunity to explain his version of

5  events.  The Board ultimately chose to give more credence to the factual findings of the appellate

6  court than Petitioner's version of events.  More importantly for the purposes of adjudicating

7  Petitioner's claim, "[t]he requirements of due process are satisfied if some evidence supports the

8  decision...Ascertaining whether this standard is satisfied does not require an examination of the

9  entire record, independent assessment of the credibility of witnesses, or *weighing of the evidence*."

10  *Hill*, 472 U.S. at 455 (emphasis added); *see also Powell v. Gomez*, 33 F.3d 39, 42 (9th Cir. 1994)

11  (finding that court cannot re-weigh the factors supporting parole suitability and the factors

12  supporting parole unsuitability).

13       In denying Petitioner a parole release date, the Board relied heavily on the commitment

14  offense, noting that the crime was carried out in an especially cruel, callous, and dispassionate

15  manner and that the motive for the crime was inexplicable.  (Pet. Ex. A at 84) .  The Board explained

16  that these findings were derived from the factual findings contained within the 2005 Board Report.

17  (Id).  First, the Court notes that reliance on the commitment offense may eventually rise to the level

18  of a due process violation, as recognized by the Ninth Circuit in *Sass* and the California Supreme

19  Court in *Lawrence*.  However, reliance on the commitment offense in Petitioner's case did not

20  violate his right to due process as: (1) the particularly egregious nature of the crime and the trivial

21  motive were probative of Petitioner's current dangerousness;  and (2) the Board did not solely rely

22  on his commitment offense to find Petitioner unsuitable.

23       State regulations provide that, in determining whether the commitment offense was

24  "especially heinous, atrocious or cruel," the following factors may be considered: the offense was

25  carried out in a dispassionate and calculated manner, such as an execution-style murder; the victim

26  was abused, defiled or mutilated during or after the offense; the offense was carried out in a manner

27  which demonstrates an exceptionally callous disregard for human suffering; the motive for the crime

28  is inexplicable or very trivial in relation to the offense.  Cal. Code Regs., tit. 15, § 2402(c)(1).

Pursuant to California law, "all second degree murders by definition involve some callousness–i.e., lack of emotion or sympathy, emotional insensitivity, indifference to the feelings and suffering of others.  As noted, however, parole is the rule, rather than the exception, and a conviction for second degree murder does not automatically render one unsuitable." *In re Smith*, 114 Cal.App.4th 343, 366 (Cal. Ct. App. 2003) (citations omitted); *see also People v. Nieto Benitez*, 4 Cal.4th 91, 102 (Cal. 1992) (stating "[s]econd degree murder is defined as the unlawful killing of a human being with malice aforethought, but without the additional elements–i.e., wilfulness, premeditation, and deliberation–that would support a conviction of first degree murder").  Thus, a showing of exceptional callousness, cruelty, or dispassion for human suffering requires evidence that "the offense in question must have been committed in a more aggravated or violent manner than that ordinarily shown in the commission of second degree murder." *In re Scott*, 119 Cal.App.4th 871, 891 (Cal. Ct. App. 2004).  Here, the record reflects that the victim was stabbed twenty-one times by Petitioner (*See* Answer Ex. 2 at 22-23).  This fact would have permitted the Board to characterize the crime as callous as it far exceeded the minimum necessary to commit second degree murder. Furthermore, Petitioner's disposal of the body displayed a dispassionate and calculating attitude towards the crime as instead of seeking medical aid for the victim Petitioner assumed that the victim was dead.  (*Id*. at 24, 84).  Petitioner then transported the body in a truck, enlisted the aid of his grandson,  and buried the victim in a cesspool on Petitioner's property.  (*Id*. at 14, 24).

A motive is inexplicable or trivial where "the commitment offense does not appear to be related to the conduct of the victim and serves no other discernible purposes. A person whose motive for a criminal act cannot be explained or is unintelligible is therefore unusually unpredictable and dangerous." *In re Scott*, 119 Cal.App.4th at 893.  While the Board did not define what exactly it meant in labeling the motive as trivial, the record reflects that Petitioner stabbed the victim after any imminent threat from the victim had already passed.  According to the facts, as incorporated by the Board from the Sate appellate decision, Petitioner had broken up the fight between the victim and his grandson and was sitting talking with the victim shortly before Petitioner suddenly stabbed him. Thus, it cannot be said that Petitioner's stabbing of the victim was related to the conduct of the victim or served a discernible purpose as the victim's threatening conduct towards Petitioner or his

1    grandson had lapsed.

2          Additionally, Petitioner lacked verified parole plans as there was no evidence presented

3    before the Board that Petitioner had a residence, income, or a support group upon which he could

4    rely if granted parole.  According to statements made at the hearing, Petitioner planned to reside on

5    his property if released.  However, as pointed out by the Board, the property was currently owned by

6    someone else.  Additionally, the legal proceedings surrounding ownership of the property had not yet

7    been resolved nor was there any indication it would be resolved by the time Petitioner was released if

8    granted parole.  Petitioner claimed that his income would be derived from social security but

9    provided no documentation to this effect.  Petitioner also did not have any letters or other evidence

10   from family members attesting that they would provide support.   Insufficient parole plans is an

11   unsuitability factor, and may constitute "some evidence" that petitioner is currently dangerous.  *See*

12   *Lawrence*, 44 Cal.4th at 1228-1229 (citing approvingly *In re Honesto*, 130 Cal.App.4th 81, 97

13   (2005) (finding some evidence to support denial of parole based on inadequate parole plans, unstable

14   social history, and inadequate participation in prison programs)); *see also* Cal. Code Regs., tit. 15, §

15   2402(d)(8).

16         The Board additionally relied upon Petitioner's prior criminal conduct, stating that, "[w]e do

17   find that there is an escalating pattern of criminal conduct and that you have failed from society's

18   previous attempts to correct your criminality."  (Answer Ex. 2 at 85).  The Board's consideration and

19   reliance on Petitioner's prior non-violent offenses was not improper.  Although California

20   regulations specifically lists a prisoner's "previous record of violence" as a factor tending to show

21   unsuitability, the regulations also permit consideration of "past criminal history, including

22   involvement in other criminal misconduct which is reliably documented."  Cal. Code Regs., tit. 15,

23   §§ 2402(b), (c)(2).  Thus, consideration of Petitioner's prior crimes is not solely limited to crimes of

24   violence and the Board could consider Petitioner's prior criminal activity as tending to show his

25   unsuitability for parole.  Petitioner's criminal history included five driving under the influence

26   convictions, possession of a stolen property, and theft charges.  (RT at 30-31).

27         In sum, the Court notes that the "some evidence standard is minimal, and assures that 'the

28   record is not so devoid of evidence that the findings of the disciplinary board were without support

1   or otherwise arbitrary.'" *Sass*, 461 F.3d at 1129 (quoting *Hill*, 472 U.S. at 457).  Here, the

2   commitment offense, Petitioner's previous failures to rehabilitate despite his prior criminal conduct,

3   and his lack of viable parole plans prevent the Court from finding that the record is so devoid of

4   evidence that Petitioner poses a current risk of danger to society.  Thus, the Sate court's denial of

5   Petitioner's claim was not an unreasonable application of clearly establish federal law.

6                                               **RECOMMENDATION**

7            Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be

8   DENIED WITH PREJUDICE and the Clerk of Court be DIRECTED to enter judgment for

9   Respondent.

10           This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United

11   States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304

12   of the Local Rules of Practice for the United States District Court, Eastern District of California.

13   Within thirty (30) days after being served with a copy, any party may file written objections with the

14   court and serve a copy on all parties.  Such a document should be captioned "Objections to

15   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and

16   filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections.

17   The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(c).  The

18   parties are advised that failure to file objections within the specified time may waive the right to

19   appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

20

21   IT IS SO ORDERED.

22   **Dated:    June 23, 2009**                 _____/s/ John M. Dixon_____
                                              UNITED STATES MAGISTRATE JUDGE

23

24

25

26

27

28